CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
NICHOLAS LAUBER (SBN 288499)
Nick@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiffs Nalin S. and
Naseeb S.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nalin S. and Naseeb S., minors through their parent/guardian Trevor Saliba,<br><br>        Plaintiff,<br><br>    vs.<br><br>Beverly Hills Unified School District, Sarah Kaber, Benjamin Wardrop, and DOES 1 - 20,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. Violation of Title IX (Deliberate Indifference)**<br>**2. Deprivation of Rights Under Color of Law (42 U.S.C. § 1983)**<br>**3. Violation of California Education Code § 200 et seq**<br>**4. Negligent Supervision**<br>**5. Violation of California Civil §51**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs NALIN S. and NASEEB S. by and through their guardian and father, Trevor Saliba (collectively "Plaintiffs"), for their complaint against Defendants Beverly Hills Unified School District ("" and "BHUSD"), Sarah Kaber, Benjamin Wardrop and DOES 1 through 20, inclusive (collectively, "Defendants"), alleges as follows:

**INTRODUCTION**

1.      This is a civil rights action seeking to address the willful and deliberate indifference of Beverly Hills Unified School District ("BHUSD") and its employees, Principal Sarah Kaber ("KABER") and Assistant Superintendent Benjamin Wardrop ("Wardrop") to a series of unfettered sexual assaults occurring at Rodeo Elementary against 9-year-old children.

2.      Minor Plaintiffs NALIN S. and NASEEB S., by and through their guardian and father, Trevor Saliba, bring this complaint because despite making reports of sexual assault perpetrated upon them by another student, BHUSD, KABER, and Wardrop sat idly by, failing to take any reasonable remedial measures, permitting the perpetrator to attack other students and torment NALIN and NASEEB.

3.      Instead, Defendants chose to obfuscate and deceive Plaintiffs and their parents by claiming an investigation had been conducted and that investigation records could not be turned over to them, before eventually admitting that no records existed because no investigation had occurred. But for NALIN's ability to recall the exact time and location of the assault upon him, video evidence of the assault in BHUSD's possession might have been lost forever because Defendants neglected to review their own surveillance footage.

4.      In what is perhaps a tacit acknowledgment of its own failure to train and supervise employees, BHUSD has since terminated KABER and El Rodeo's Assistant Principal, Kevin Painter's employment, with BHUSD's successor Superintendent taking immediate action to have perpetrator suspended, over six months after the first incident, and actually commencing the first Title IX

investigation after the school year ended. However, these actions are too little, too late and fail to address the trauma and suffering experienced by Plaintiffs.

## **PARTIES**

5.      Plaintiff NALIN S. a minor, who at all times relevant herein, is, and was, a resident of the County of Los Angeles. Accordingly, an Application and Order for Appointment of *Guardian Ad Litem* requesting that Trevor Saliba., NALIN's father, be appointed as his *Guardian ad Litem* in the United States District Court for the Central District is filed contemporaneously with this lawsuit. To protect his privacy NALIN has been identified herein as "NALIN S."

6.      Plaintiff NASEEB S. a minor, who at all times relevant herein, is, and was, a resident of the County of Los Angeles. Accordingly, an Application and Order for Appointment of *Guardian Ad Litem* requesting that Trevor Saliba., NASEEB's father, be appointed as his *Guardian ad Litem* in the United States District Court for the Central District is filed contemporaneously with this lawsuit. To protect his privacy NASEEB has been identified herein as "NASEEB S."

7.      At the time of the incidents giving rise to this action, NALIN S. and NASEEB S. were minors and students entrusted to the care of Defendant Beverly Hills Unified School District ("BHUSD").

8.      Defendant Beverly Hills United School District is a public entity within the meaning of California Government Code sections 811.2 and 900 *et seq.* and is duly incorporated and operating under California law as a school district. The state of California apportions funds to BHUSD. Although the balance between sources fluctuates slightly from year to year, Plaintiffs are informed and believe, the federal government provides over $1 million in funding each year. At all times herein mentioned, Defendant BHUSD had the responsibility of providing Plaintiffs with full and equal access to a public education in compliance with federal and state laws and regulations.

9.      Plaintiffs allege that Defendant BHUSD and DOES 1 through 10 at all

relevant times herein mentioned controlled, directed, managed, operated and/or owned El Rodeo Elementary.

10.     Defendant Sarah KABER at all times herein mentioned, was employed as the Principal of El Rodeo Elementary, located in the County of Los Angeles, State of California. As the Principal of El Rodeo Elementary,  KABER was responsible for the hiring, training, and supervision of El Rodeo Elementary staff.  KABER additionally had the authority to investigate, discipline, and take corrective measures on behalf of El Rodeo Elementary and BHUSD. On information and belief, KABER was also responsible for ensuring compliance with state and federal laws pertaining to behavior interventions, supervision, and training. All actions alleged herein by KABER were taken under color of state law and in the course and scope of her employment with BHUSD and/or DOES 1 through 10.

11.     Plaintiffs allege that at all relevant times, DOES 11 through 20 were the employees, agents, officers and/or directors of BHUSD and were acting within the course and scope of their employment with BHUSD or in an official capacity. Pursuant to California Government Code sections 815.2 and 820, BHUSD is liable for the acts and omissions of its employees that are within the course and scope of employment. *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747.

12.     The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendant DOES 1 through 20, inclusive, are unknown to Plaintiffs who therefore sue Defendants by such fictitious names. When the true names and capacities of DOES 1 through 20 are ascertained, Plaintiffs will seek leave to amend this complaint by inserting their true names and capacities herein.

13.     Defendant Benjamin Wardrop at all times herein mentioned, was employed as the Director of Student Services and Title IX Coordinator for BHUSD, located in the County of Los Angeles, State of California. As the Title IX Coordinator, Wardrop was responsible for the hiring, training, and supervision of BHUSD staff in

connection with Title IX investigations. Defendant Wardrop additionally had the authority to investigate and take corrective measures on behalf of BHUSD in all Title IX Investigations. On information and belief, Wardrop was also responsible for ensuring compliance with Title IX. All actions alleged herein by Wardrop were taken under color of state law and in the course and scope of his employment with BHUSD and/or DOES 1 through 10.

14.    Plaintiffs allege that during the relevant times referenced herein, that each of the Defendants sued herein was the agent, servant, employee, joint venture, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants, and was acting within the purpose, scope, course, and authority of such agency, servitude, employment, joint venture, partnership, division, ownership, subsidiary, alias, assignment, alter-ego, and with the authority, consent, approval, and ratification of each remaining Defendant.

15.    Plaintiffs allege that each of the named Defendants and each of the fictitiously named Defendants are legally responsible in some manner for the occurrences alleged herein, and that the injuries as alleged herein were proximately and legally caused by the acts and/or omissions of such Defendants.

### JURISDICTION AND VENUE

16.    This court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. section 1331 and 28 U.S.C. section 1343(a)(3). This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. section 1367(a).

17.    Venue is proper in this district pursuant to 28 U.S.C. sections 1391(b) because the BHUSD has its principal place of business and operation in its jurisdictional area, Plaintiffs and the remaining named Defendants reside and/or work in its jurisdictional area, and because the obligations and liabilities of all Defendants and/or DOES 1 through 20, inclusive, arise therein.

**GENERAL ALLEGATIONS**

18.    On November 15, 2024, NALIN S. was at El Rodeo Elementary, on a school day, playing on the walking ramp between the D and E buildings when he was approached by Logan, another student at El Rodeo Elementary who was 8 years old at the time (Logan is referred to in this complaint by first name only given his minor age).

19.    Logan approached NALIN, who was seated on the ground, crouched to the ground, directed his head towards NALIN's groin, and grabbed NALIN's penis over the clothes and used his mouth in an attempt to either kiss NALIN's penis or mimic oral copulation. When NALIN pushed Logan away telling him "I'm going to tell on you", Logan then stated to NALIN, "NALIN, I like dicks."

20.    NALIN S. was shocked and confused by incident, especially in light of his being only nine years old and unfamiliar with sexual behavior. He waited until he was picked up by his mother that day to report the incident to anyone.

21.    NALIN S. and his mother then immediately reported the incident to KABER who was supervising school pickup.

22.    That evening, NALIN and NASEEB's father, emailed KABER, Kevin Painter, and NALIN's teacher with a description of the incident.

23.    In January of 2025, NASEEB was playing on the playground at El Rodeo Elementary during recess. NASEEB was seated on a bridge-like playground structure. Logan then reached up through a perforation in play structure, intentionally touch NASEEB on or around his penis, over the clothes.

24.    Similar to the experience of his brother, NASEEB S. was shocked and confused by the incident, especially in light of age and immaturity.

25.    NASEEB S. and his mother notified KABER about this incident the same day  it occurred in person while KABER was monitoring school pick-up.

26.    KABER failed to inform NALIN, NASEEB, or their parents what happened after the incident, what investigation was undertaken, what action was taken

to discourage, discipline, or prevent further events.

27.    NALIN S. and NASEEB S. have continued to attend El Rodeo Elementary, where they cross paths with Logan frequently as he is a schoolmate. Logan repeatedly taunts and mocks NALIN S. and NASEEB S. when he sees them at school, causing NALIN S. and NASEEB S. to feel embarrassment, anger, and confusion.

28.    Plaintiffs are informed and believe and on that basis allege Logan has been involved in other incidents in which he has sexually assaulted other classmates. Specifically, Plaintiffs are informed and believe that Logan approached another 9 year old boy in the restroom while that boy was using a urinal and made skin-to-skin contact with that boy's penis in late March 2025.

29.    Additionally, Plaintiffs are informed and believe and on that basis allege Logan has been involved in incidents where he has engaged in hyper-sexualized and inappropriate behavior with other students where he has either exposed himself by removing his pants, lured younger students into the school bathroom and then turned off the lights, cornered other students in a secluded area of the school to force them to watch him make another student kiss him.

30.    Eventually, and only after the incident in which Logan made skin-to-skin contact with another student in the restroom, BHUSD took minimal preventive measures, assigning an adult to chaperone Logan during restroom breaks to make sure Logan was not entering the restroom when it was occupied by other students. However, this chaperone frequently fails to adequately supervise Logan as he frequently finds his way into the restroom with other students.

31.    On April 15, 2025, after learning of the incident in which Logan touched another student skin-to-skin in the restroom, NALIN S. and NASEEB S.'s parents inquired with KABER in a follow up to their original complaint, what investigation and measures had been taken in response to the incidents involving their children.

32.    KABER acknowledged that she should have told them in November

what action was taken and stated in response "I went back to look at our discipline records for this incident and we did record it and gave consequences for the other student. Our notes say that Title IX was not indicated in that incident. We have been working with the parents of the other student all year and have included other staff members to support him and his family."

33.    Trevor Saliba inquired further to get an explanation of how this incident did not trigger a Title IX investigation. KABER responded "I want to clarify that the Title IX checklist is an internal document we use to ensure compliance with federal law. It is aligned with the legal requirements outlined in Title IX and helps us determine whether a reported incident meets the criteria for a formal Title IX investigation. In this particular case in November, we determined that the incident did not meet the legal threshold for a Title IX violation.

34.    Trevor Saliba asked for the school's Title IX coordinator, asked to review the "checklist" KABER referred to, and wanted to review the file documentation, acknowledging that it could be redacted. At the time KABER was designated as the Title IX coordinator for El Rodeo Elementary per the school website.

35.    WARDROP then reached out to Trevor Saliba as the BHUSD Title IX Coordinator.

36.    KABER refused to give access to the "checklist" or any incident records to NALIN S., NASEEB S., or their parents. KABER further indicated that WARDROP had instructed her not to give Plaintiffs access to the documents.

37.    Trevor Saliba reiterated his request to review the checklist and file documentation to WARDROP and offered to discuss the matter with WARDROP. He further advised WARDROP of all prior events related to the incident and has attempts to review the investigation documentation.

38.    WARDROP continued to advise Trevor Saliba that the documents used in assessing the incidents involving NALIN and NASEEB were internal and deemed

1  not part of their file and could not be shared.

2      39.    Plaintiffs filed a public records request on April 23, 2025 for all BHUSD
3  documents related to any incident involving NALIN and/or NASEEB.

4      40.    Trevor Saliba continued to request documents related to the incidents
5  involving NALIN and NASEEB through WARDROP, but WARDROP responded
6  that he was aware of the public records request and suggested that the documentation
7  requested would be provided through the public records request. Plaintiffs then
8  pointed out that if the documents were as WARDROP described, then these particular
9  documents would not be deemed responsive under the public records request.

10     41.    Plaintiffs and WARDROP set up a meeting to be able to review the
11 "checklist" and that records that KABER referenced which were created in November
12 at the time of reporting.

13     42.    WARDROP responded that "I have no plan of reviewing documents in
14 our meeting. I know you have a Public Records Request that is in process. That
15 document may be addressed through that process."

16     43.    Plaintiffs were confused that WARDROP was again refusing to provide
17 any documentation as that was the purpose of the meeting. WARDROP responded "I
18 was offering for us to speak in person as I believe our communication via email hasn't
19 been productive. As I stated in my previous email, some of the documents you are
20 looking for may be addressed through the PRA request you submitted."

21     44.    WARDROP still refused to provide any records or documents.

22     45.    In relation to a separate incident involving NASEEB S., Plaintiffs and
23 their parents learned that BHUSD requires students to who suffer sexual harassment
24 are required to fill out a handwritten statement describing the incident in their own
25 words and attesting thereto, without regard to the student being a minor or the
26 student's reading and writing skill level.

27     46.    Plaintiffs demanded to see a copy of any statements they were made to
28 sign   regarding the incidents involving Logan and NALIN S. and NASEEB S.

BHUSD employee and Assistant Principal Kevin Painter and KABER both refused to give Plaintiffs access to the documents, until after much advocacy, Painter agreed to meet with the Plaintiffs to review the documents, feigning that the refusal had been due solely to his understanding that the Plaintiffs wanted a copy to take with them. In advance of this meeting, Painter advised Plaintiffs that they could not take photos or make copies of the documents.

47. WARDROP responded that schools may interview students without notifying parents, classifying the handwritten statement under penalty of perjury as the functional equivalent of a school administrator simply questioning a student. WARDROP further confirmed that the statement forms had been approved by BHUSD for use with all students, irrespective of age.

48. Assistant Principal Kevin Painter shared an incident report for a separate incident involving NASEEB S. with Plaintiffs. During this same meeting, Plaintiffs then asked about the incident reports involving Logan and if they could view it because they were already at school. Painter said he does not know where the report is and when pushed, would not confirm that the incident report existed and only indicated that Plaintiffs should deal with Wardrop.

49. Plaintiffs then asked WARDROP if any internal report exists related to the incidents. WARDROP acknowledged "In response to your question, there is a worksheet that administrators use to evaluate the incident. This was completed and I have seen it. There is not an investigative report, as it was deemed by site administration to not rise to the level that required an investigation of such depth. Ms. Kaber did respond to the incident and completed the internal evaluation worksheet."

50. On May 23, 2025, Plaintiffs received a copy of the Title IX Worksheet through the public records request. The worksheet requires an investigation when there is a hostile environment specifically "Unwelcome conduct a reasonable person would find to be so severe, pervasive, and objectively offensive effectively denying equal access to education programs or an activity."

51.    KABER, WARDROP and BHUSD for some reason believe that when a nine-year old has his penis grabbed and the other student says "I like dicks," this does not qualify as a hostile environment. And when similar events happen to that students' twin brother, KABER, WARDROP and BHUSD  still believe no action needs to be taken and that these incidents do not rise to the level of a hostile environment.

52.    Furthermore, when the assailant involved in the same incidents involving not only NALIN and NASEEB, but is known to involve multiple other students, KABER, WARDROP and BHUSD still believed no action needed to be taken and that this pattern of repeated behavior did not rise to the level of a hostile and unsafe environment for the students of El Rodeo School.

53.    When Plaintiffs pressed WARDROP as to why this did not warrant a Title IX investigation, WARDROP stated that an investigation is not warranted without the assailant experiencing sexual gratification. Additionally, KABER described the events as mere bullying.

54.    On May 28, 2025, with the assistance of NALIN, Assistant Principal Darlene Levine (who is no longer employed by El Rodeo School) was able to locate the El Rodeo surveillance video for November 15, 2024 involving NALIN and Logan and show it to the Plaintiffs for the first time. The video was viewed in Assistant Principal Levine's office at El Rodeo School.

55.    Because KABER, WARDROP, and BHUSD did not believe the incidents merited Title IX investigation after receiving Plaintiffs' oral report and as a result of seeing the shocking video the Plaintiffs were left with no other choice than to file a formal Title IX report on May 28, 2025 and submitted it to BHUSD.

56.    Plaintiffs learned on May 29, 2025, that Superintendent Cherniss had instructed Kaber to suspend Logan for the remainder of the school year, a total of one (1) day.

57.    Plaintiffs submitted a presentation of claim to BHUSD pursuant to California Government Code sections 900 et seq. on June 12, 2025. BHUSD failed to

1 respond to the claim thereby denying it as a matter of law.

2 **FIRST CAUSE OF ACTION**

3 **Violation of Title IX (Deliberate Indifference) – Plaintiffs Against BHUSD**

4     58.    Plaintiffs repeat and reallege each and every allegation hereinabove as if

5 fully set forth herein.

6     59.    Title IX provides that no person in the United States shall, on the basis

7 of sex, be excluded from participation in, or be denied the benefits of, or be subjected

8 to discrimination under any educational program or activity receiving Federal

9 financial assistance.

10     60.    Defendant BHUSD is a public entity receiving federal funds which

11 makes it subject to Title IX of the Educational Amendments of 1972.

12     61.    Private right of action for claims of Title IX violations is well-

13 established. *Cannon v. University of Chicago,* 441 U.S. 677 (1979). The US Supreme

14 Court has also allowed monetary damages for Title IX violations. *Franklin v.*

15 *Gwinnett County Public Schools,* 503 U.S. 60 (1992).

16     62.    The Rehabilitation Act Amendments of 1986 abrogate States' immunity

17 under the Eleventh Amendment for Title IX violations. 42 U.S.C. § 2000d-7.

18     63.    Logan sexually assaulted NALIN S. by grabbing NALIN's penis over

19 the clothes and used his mouth in an attempt to either kiss NALIN's penis or mimic

20 oral copulation and then stating "NALIN, I like dicks." Subsequently, Logan has

21 bullied and harassed NALIN S.  through taunting him at school.  And made NALIN

22 fearful of further conduct as Logan has engaged in hypersexualized behavior towards

23 other students, including his brother. This conduct is actionable under Title IX

24 because it is based on sex and was so severe and pervasive that it has deprived NALIN

25 S. of his education by disrupting the environment in which he receives his education.

26 *Davis v. Monroe County Board of Education,* 526 U.S. 629, 676 (1999).

27     64.    Logan's conduct has caused NALIN S. to have suffered severe emotional

28 distress; NALIN S. has been unable to sleep with the lights off, sleep in his own bed

alone waking up several times at night, has been withdrawn, and is discouraged from attending and participating in his education at El Rodeo Elementary because of the fear, embarrassment, and mockery he has suffered.

65. Logan sexually assaulted NASEEB S. by touching the area around NASEEB's genitals. Subsequently, Logan has bullied and harassed NASEEB S. through taunting him at school. And made NASEEB fearful of further conduct as Logan has engaged in hypersexualized behavior towards other students. This conduct is actionable under Title IX because it is based on sex and was so severe and pervasive that it has deprived NASEEB S. of his education by disrupting the environment in which he receives his education. *Davis v. Monroe County Board of Education,* 526 U.S. 629, 676 (1999).

66. Logan's conduct has caused NASEEB S. to have suffered severe emotional distress; NASEEB S. has been withdrawn and is discouraged from attending and participating in his education at El Rodeo Elementary because of the fear, embarrassment, and mockery he has suffered.

67. BHUSD was aware of Logan's harassment as it was directly reported to its employees, namely KABER and subsequently Wardrop. The failure to halt harassment of which a school district is aware constitutes intentional discrimination. *Franklin v. Gwinnet County Public Schools,* 502 U.S. 112 (1992).

68. Defendants' responsibility to address and respond to sexual harassment and assault applies regardless of whether a student has complained, asked the school to take action, or identified the harassment as a form of discrimination. *See* U.S. Dept. of Education, Office for Civil Rights, Dear Colleagues Letter, Oct. 26, 2010.

69. BHUSD failed in its responsibilities to provide an environment free from discrimination, harassment and assault to NALIN S. and NASEEB S. who suffered severe psychological trauma as a result of said failure.

70. BHUSD had control over Logan, the harasser and assailant, and the campus of El Rodeo Elementary School, where the harassment and assaults occurred.

BHUSD and its officials had authority to take corrective action to end the discrimination, harassment and assaults, but they failed to do so and ignored the many instances of student-on-student harassment and assault involving Logan., including of Plaintiffs. by Logan., despite knowledge that these events were taking place and escalating.

71.    Plaintiffs suffered such severe, pervasive, and objectively offensive harassment and assault that it has deprived them of access to the educational opportunities or benefits provided by the school.

72.    BHUSD had actual knowledge of the harassment perpetrated by Logan at El Rodeo Elementary School. BHUSD has a duty to protect a safe environment for the students. BHUSD has a duty to supervise the conduct of students in the classrooms, restrooms, and playground and to exercise ordinary care to protect students for the predatory types of attacks described above. BHUSD gained virtually immediate actual and constructive notice that Logan had behavioral problems.. He was involved in sexual attacks as described herein. BHUSD was negligent and careless in failing to adequately supervise Logan and thereby, allowed the attacks and subsequent harassment to continue for months.

73.    Despite the reports and concerns about the hypersexualized behavior, El Rodeo Elementary School employees, including KABER, continued to allow Logan. in the classroom and on the playground unaccompanied and unsupervised, during which Logan continued to taunt Plaintiffs. and, on information and belief, assault other children.

74.    BHUSD was deliberately indifferent to the harassment and assaults occurring on a regular basis at El Rodeo Elementary School.  BHUSD was on notice for months of the troubling events involving Logan and Plaintiffs or others, yet BHUSD did nothing to even attempt to fix the problem. Rather BHUSD continually tried to sweep the incident under the rug and obfuscate any investigation into their actions.

75.    As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

### SECOND CAUSE OF ACTION

### Deprivation of Rights Under Color of Law (42 U.S.C. § 1983) – Plaintiffs Against KABER, WARDROP, and Does 1-10.

76.    Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

77.    Section 1983 is presumptively available to remedy a state's ongoing violation of federal law. 42 U.S.C. § 1983; *AlohaCare v. Haw. Dep't of Human Servs.,* 572 F.3d 740, 745 (9th Cir. 2009). Title IX does not preclude constitutional Section 1983 violations. *Fitzgerald v. Barnstable Sch. Comm.,* 129 S.Ct. 788 (2009).

78.    Persons acting under color of law are subject to suit under Section 1983. KABER, WARDROP and DOES 1-10 acting under the color of state law, intentionally discriminated against Plaintiffs by knowingly failing to address the sexual assaults and subsequent bullying of Plaintiffs by Logan., despite explicit and immediate reports from Plaintiffs to KABER and follow up reports in writing by Plaintiffs parents

79.    KABER, WARDROP and DOES 1-10 acted with deliberate indifference in responding to the complaints of sexual and physical abuse on the El Rodeo Elementary School campus, and repeatedly exposed Plaintiffs to the risk of sexual attacks and subsequent bullying that have discouraged Plaintiffs from attending and participating in their education at El Rodeo Elementary because of the fear, embarrassment, and mockery they has suffered.

80.    KABER, WARDROP and DOES 1-10 failed to investigate or take remedial action despite their awareness of multiple instances of the hypersexualized behavior of Logan including assaults of Plaintiffs over a period of many months.

81.    KABER, WARDROP and DOES 1-10 are responsible for student supervision. They had a duty of care toward Plaintiffs and all other students to prevent

the known and rampant hypersexualized behavior of Logan occurring on the premises of El Rodeo Elementary School.

82.    KABER, WARDROP and DOES 1-10, and each of them, are liable for Title IX violations by discriminating against Plaintiffs on the basis of sex.

83.    KABER, WARDROP and DOES 1-10 failed in their responsibilities to provide an environment free from discrimination and harassment to Plaintiffs who suffered severe psychological trauma as a result of said failure.

84.    KABER, WARDROP and DOES 1-10 had control over Logan, the harasser, and the campus of El Rodeo Elementary School, where the harassment occurred. KABER, WARDROP, and DOES 1-10 had authority to take corrective action to end the discrimination, harassment and assaults, but they failed to do so and ignored the many instances of hypersexualized behavior involving Logan at El Rodeo Elementary School, including of Plaintiffs by Logan, despite direct knowledge that these events were occurring.

85.    Plaintiffs suffered such severe, pervasive, and objectively offensive harassment and assault that it has deprived them of access to the educational opportunities or benefits provided by the school.

86.    KABER, WARDROP and DOES 1-10 had actual knowledge of the harassment perpetrated by Logan at El Rodeo Elementary School. KABER, WARDROP and DOES 1-10 have a duty to protect a safe environment for the students. KABER, WARDROP and DOES 1-10  has a duty to supervise the conduct of students in the classrooms, restrooms, and playground and to exercise ordinary care to protect students for the predatory types of attacks described above. KABER, WARDROP and DOES 1-10 gained virtually immediate actual and constructive notice that Logan had behavioral problems.. He was involved in sexual attacks as described herein. KABER, WARDROP and DOES 1-10  was negligent and careless in failing to adequately supervise Logan and thereby, allowed the attacks and subsequent harassment to continue for months.

87.    Despite the reports and concerns about the hypersexualized behavior, El Rodeo Elementary School employees, including KABER, continued to allow Logan. in the classroom and on the playground unaccompanied and unsupervised, during which Logan continued to taunt Plaintiffs. and, on information and belief, assault other children.

88.    KABER, WARDROP and DOES 1-10 were deliberately indifferent to the harassment and assaults occurring on a regular basis at El Rodeo Elementary School.  KABER, WARDROP and DOES 1-10  were on notice for months of the troubling events involving Logan and Plaintiffs or others, yet they did nothing to even attempt to fix the problem. Rather KABER, WARDROP and DOES 1-10 continually tried to sweep the incident under the rug and obfuscate any investigation into their actions.

89.    As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

90.    Furthermore, KABER's conduct was malicious, oppressive, and despicable in that she was fully cognizant of the extent of the sexual abuse upon minor children and not only ignored her caretaking obligations but also lied to cover up that she was permitting this conduct to occur that Plaintiffs are entitled to punitive damages.

### THIRD CAUSE OF ACTION

### Violation of California Education Code § 200 et seq – Plaintiffs Against All Defendants

91.    Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

92.    California Education Code section 200 *et seq*. provides for a private right of action for intentional discrimination on the basis of sex, which includes sexual harassment. Section 220 of the Education Code provides: "[n]o person shall be subjected to discrimination on the basis of ... gender....in any program or activity

1  conducted by an educational institution that receives, or benefits from, state financial

2  assistance or enrolls pupils who receive state student financial aid."

3      93.    The California legislature specifically declared its intent that an action

4  under the Education Code shall be interpreted as consistent with Title IX of the

5  Education Amendments of 1972, 20 USC 1681, *et seq.* (Cal. Ed. Code 201 (g)). A

6  plaintiff may maintain an action for monetary damages against a school district when

7  the plaintiff alleges that he suffered severe, pervasive and offensive harassment that

8  effectively deprived the plaintiff of the right of equal access to educational benefits

9  and opportunities; the school had actual knowledge of the harassment; and the school

10 responded with deliberate indifference. *Donovan v. Poway Unified SchoolDist.,* 167

11 Cal.App.4th 567, 603-09 (2008).

12     94.    The California legislature recognized that all pupils enrolled in the state

13 public schools have the inalienable right to attend classes on school campuses that are

14 safe, secure, and peaceful. Cal. Ed. Code 32261 (a), Article I, section 28 (c) of the

15 California State Constitution.

16     95.    Logan sexually assaulted Plaintiffs through touching their genitals, as

17 stated herein above. This type of conduct is actionable under Cal. Ed. Code §§ 220 *et*

18 *seq.* because it is based on gender (it is a sexual assault), and was so severe and

19 pervasive that it deprived Plaintiffs of their education and had a detrimental effect on

20 their mental health as stated herein above, and caused substantial interference with

21 Plaintiffs' ability to participate in their education.

22     96.    BHUSD was aware of Logan's assaults and hypersexualized conduct as

23 it was reported directly to it by Plaintiffs through KABER. The failure to halt

24 harassment and bullying of which a school district is aware constitutes intentional

25 discrimination. *Franklin v. Gwinnet County Public Schools,* 502 U.S. 112 (1992).

26     97.    Defendants' responsibility to address and respond to sexual harassment

27 applies regardless of whether a student has complained, asked the school to take

28 action, or identified the harassment as a form of discrimination. *See* U.S. Dept. of

Education, Office for Civil Rights, Dear Colleagues Letter, Oct. 26, 2010.

98.    BHUSD failed in its responsibilities to provide an environment free from discrimination and harassment to Plaintiffs who suffered severe psychological trauma as a result of said failure.

99.    BHUSD had control over Logan, the harasser, and the campus of El Rodeo Elementary School, where the harassment occurred. BHUSD and its officials had authority to take corrective action to end the discrimination and harassment, but they failed to do so and ignored the many instances of student-on-student harassment at El Rodeo Elementary School involving Logan, including of Plaintiffs by Logan, despite explicit knowledge the events were occurring.

100.    BHUSD had actual knowledge of the conduct perpetrated by Logan El Rodeo Elementary School. BHUSD has a duty to protect a safe environment for the students. BHUSD has a duty to supervise the conduct of students in the classrooms, restrooms, and playground and to exercise ordinary care to protect students for the predatory types of attacks described above. BHUSD gained virtually immediate actual and constructive notice that Llogan had behavioral problems which resulted in the sexual attacks as described herein. BHUSD was negligent and careless in failing to adequately supervise Logan and thereby allow the attacks to continue for months.

101.    Despite the reports and concerns about bullying, harassment and PLAINTIFFS's safety while on campus, EL RODEO Elementary School employees, including KABER, continued to allow Logan in the classroom, playground, school bathrooms and cafeteria unaccompanied and unsupervised, during which Logan continued to abuse PLAINTIFFS and, on information and belief, other children.

102.    BHUSD was deliberately indifferent to the sexual assaults at El Rodeo Elementary School. BHUSD was on notice for months of the troubling events involving Logan and Plaintiffs or others, yet BHUSD did nothing to even attempt to fix the problem, leading to taunting and harassment of Plaintiffs by Logan.

103.    As a proximate result of Defendants' negligent acts, Plaintiffs have

1  incurred damages as alleged heretofore.

2  104.  Furthermore, KABER's conduct was malicious, oppressive, and

3  despicable in that she was fully cognizant of the extent of the sexual abuse upon minor

4  children and not only ignored her caretaking obligations but also lied to cover up that

5  she was permitting this conduct to occur that Plaintiffs are entitled to punitive

6  damages.

7  **FOURTH CAUSE OF ACTION**

8  **Negligent Supervision – Plaintiffs Against WARDROP, BHUSD, and DOES 1-**

9  **10**

10  105.  Plaintiffs repeat and reallege each and every allegation hereinabove as if

11  fully set forth herein.

12  106.  BHUSD led the process that resulted in the hiring of KABER,

13  WARDROP, and DOES 1-10.

14  107.  KABER was a principal at El Rodeo Elementary School and responsible

15  for supervision of employees at El Rodeo Elementary.

16  108.  WARDROP was an assistant superintendent and responsible for the

17  supervision of employees at BHUSD, including those as El Rodeo Elementary,

18  including KABER.

19  109.  BHUSD was responsible for the supervision of its employees.

20  110.  KABER was aware of the sexual assault described herein, as well as her

21  own failure to investigate, follow up, or enact remedial measures. KABER also served

22  as El Rodeo Elementary School's Title IX Coordinator. KABER specifically

23  dismissed the incident involving sexual assault as not rising to the level of a Title IX

24  Investigation and willfully chose to take no further action until pressed thereon.

25  111.  When pressed, KABER misrepresented the nature and documentation of

26  the investigation she conducted. KABER misrepresented the existence of purported

27  documents involving the incidents repeatedly and further attempted to cover up her

28  dishonesty by falsely claiming the documents would be deemed confidential pursuant

1   to BHUSD policy and not able to be shared with the Plaintiffs.

2       112.  When WARDROP and BHUSD learned of KABER's refusal to
3   investigate the incident, they took no corrective action. WARDROP further conspired
4   with KABER by engaging in deliberate and knowing misrepresentations regarding
5   the existence of investigation documents and policies regarding the disclosure of such
6   documents

7       113.  The negligent supervision of KABER, by WARDROP, BHUSD, and
8   DOES 1-10, resulted in an assault upon NASEEB S., assault upon other students, and
9   taunting and harassment of Plaintiffs by Logan. This failure was a direct and
10  proximate cause of Plaintiffs suffering severe psychological trauma as a result of said
11  failure.

12      114.  WARDROP, BHUSD, and DOES 1-10 owed Plaintiffs, and all students,
13  a duty to maintain a safe environment, free from the hostility, assault, and bullying
14  described herein. WARDROP, BHUSD, and DOES 1-10  owed BHUSD students a
15  safe environment, and had a duty to supervise BHUSD employees to ensure the
16  employees maintain said safe environment as well.

17      115.  The negligence of WARDROP, BHUSD, and DOES 1-10  acted as a
18  tacit approval of KABER's refusal to investigate the sexual assaults and refusal to
19  turn over documents showing her efforts, or lack thereof, in response to reasonable
20  requests.

21      116.  As a result of WARDROP, BHUSD, and DOES 1-10 's negligence,
22  negligent hiring and negligent supervision of KABER , Plaintiffs Decedent
23  experienced severe psychological trauma and a denial of reasonable access to their
24  education..

25      117.  As a proximate result of Defendants' negligent acts, Plaintiffs have
26  incurred damages as alleged heretofore.

27

28

1

## **FIFTH CAUSE OF ACTION**

2

### **Violation of California Civil Code § 51 et seq – Plaintiffs Against All**

3

### **Defendants**

4        118.    Plaintiffs repeat and reallege each and every allegation hereinabove as if

5    fully set forth herein.

6        119.    The above described conduct by Defendants violated the right of the

7    Plaintiffs to be free and equal regardless of gender or sexual orientation and to receive

8    full and equal accommodations, advantages, facilities, privileges, or services from

9    Defendants.

10        120.    Wherefore, Plaintiffs request relief as set forth in the Request for Relief

11    below.

12

### **PRAYER**

13        WHEREFORE, Plaintiff(s) pray(s) for judgment against Defendants, and each

14    of them, as follows:

15        1.        For actual and compensatory damages in an amount to be proven at trial;

16        2.        For exemplary and punitive damages in an amount to be determined at

17    the time of trial;

18        3.        For attorney's fees and costs as permitted by applicable law;

19        4.        For pre-judgment and post-judgment interest at the maximum legal rate;

20    and

21        5.        For such other and further relief as the Court may deem just and proper.

22

23

24

25

26

27

28

COMPLAINT

1  DATED:  August 11, 2025          FROST LLP

2

3

4                                          By: _____

5                                               CHRISTOPHER FROST
                                               NICHOLAS LAUBER
6
                                               Attorneys for Plaintiffs Nalin S. and
7                                               Naseeb S.

8                        **<u>DEMAND FOR JURY TRIAL</u>**

9          Plaintiff(s) hereby demand(s) a trial by jury on all issues and causes of action

10  triable by a jury.

11

12  DATED:  August 11, 2025          FROST LLP

13

14

15                                          By: _____

16                                               CHRISTOPHER FROST
                                               NICHOLAS LAUBER
17                                               Attorneys for Plaintiffs Nalin S. and
18                                               Nasseb S.

19

20

21

22

23

24

25

26

27

28